UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GOODRICH CAPITAL, LLC and
WINDSOR SHEFFIELD & CO. INC.,

                Plaintiffs,

        -against-

VECTOR CAPITAL CORPORATION,

            Defendant.

11 CIV 09247 (JSR)


ECF CASE


**DEFENDANT VECTOR CAPITAL CORPORATION'S  MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**


PARK & JENSEN LLP

Robert Knuts
Joshua Andrix

630 Third Avenue, 7th Floor
New York, NY 10017
Telephone: (646) 200-6330
Facsimile: (646) 200-6331

*Attorneys for Defendant*
*Vector Capital Corporation*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ...................................................................................... 1

STATEMENT OF FACTS ......................................................................... 3

ARGUMENT ............................................................................................. 8

    THE COURT SHOULD DISMISS THE FIRST AMENDED COMPLAINT
    WITH PREJUDICE BECAUSE NONE OF  THE CAUSES OF ACTION
    STATE A CLAIM FOR RELIEF ............................................................. 8

    A.    The Standard of Review on a Motion to Dismiss .................................. 8

    B.    This Dispute is Governed by New York Law ........................................ 9

    C.    Plaintiffs Have Failed to State a Claim for Breach of Contract ............................ 9

        1.    The Express Terms Of The NDA Do Not Require Vector
            To Pay Any Fees To Goodrich And, Instead, Plainly State
            That Any Fees To Be Received By Any Party Will Be
            The Subject Of A Separate Agreement ...................................... 10

        2.    The Breach Of Contract Claims Should Be Dismissed Because
            The NDA Was Unrelated To The Tidel Transaction Completed
            By Vector And For Which Plaintiffs Seek Damages............................... 11

        3.    Plaintiff Goodrich's Breach Of Contract Claim Should Be Dismissed
            Because Plaintiffs Fail To Allege That Vector Misused Any
            Confidential Information Concerning The Cash Management
            Business Disclosed By Goodrich To Vector Under The NDA................. 12

    D.    Plaintiffs' Claim for Breach of the Implied Covenant of Good  Faith
        and Fair Dealing Should be Dismissed Because It Does Not Constitute
        A Separate Claim For Relief Under New York Law ............................................ 13

    E.    Plaintiffs' Claim for Unfair Competition Should Be Dismissed Because
        They have Failed to Allege the Basic Elements of This Claim ............................ 14

    F.    Plaintiffs' Claim for Unjust Enrichment Should Be Dismissed
        Because an Express Agreement, the NDA, Governs the Subject
        Matter of the Dispute ............................................................... 16

    G.    Plaintiffs' Claim for Tortious Interference with Contract
        Should Be Dismissed ............................................................... 17

    H.    All Claims Asserted by Plaintiff Windsor Should be Dismissed ........................ 18

CONCLUSION........................................................................................... 19

i

## **TABLE OF AUTHORITIES**

### **CASES**

**Page(s)**

*ACTV, Inc. v. Walt Disney Co.*,
   No. 01 Civ. 8402(JSR), 2002 WL 922172, at *2 (S.D.N.Y. May 7, 2002) ............................ 15

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937, 1949 (2009) ........................................................................................... 8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87, 98 (2d Cir. 2007) ........................................................................................... 8

*Babcock v. Jackson*,
   12 N.Y.2d 473, 481 (1963). ............................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 570 (2007) ................................................................................................... 8

*Burrowes v. Combs*,
   25 A.D.3d 370, 373 (1st Dep't 2006) .............................................................................. 17

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
   70 N.Y.2d 382, 388 (1987) ............................................................................................... 16

*Cox v. NAP Constr. Co., Inc.*,
   10 N.Y.3d 592, 607 (2008) ............................................................................................... 16

*Feingold v. Chrismas*, --- F. Supp. 2d ----,
   10 Civ. 8458(JSR), 2011 WL 4863699, at *3, 5 (S.D.N.Y. Oct. 12, 2011) .................. 9, 11, 16

*Fin. One Public Co. Ltd. v. Lehman Bros. Special Fin. Inc.*,
   414 F.3d 325, 331 (2d Cir.2005) ........................................................................................ 9

*Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*,
   273 F.3d 509, 519 (2d Cir. 2001) ...................................................................................... 16

*Goldman v. Metro. Life Ins. Co.*,
   5 N.Y.3d 561, 572 (2005) ................................................................................................. 16

*Harris v. Provident Life & Accident Ins. Co.*,
   310 F.3d 73, 81 (2d Cir. 2002) ......................................................................................... 13

*Harris v. Seward Park Hous. Corp.*,
   79 A.D.3d 425, 426 (1st Dep't 2010) (per curiam) ......................................................... 10

*Jacobs Private Equity, LLC v. 450 Park LLC*,
  22 A.D.3d 347, 347-48 (1st Dep't 2005) .............................................................. 14

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27, 34 (2d Cir.1995).............................................................................. 14

*Lama Holding Co. v. Smith Barney Inc.*,
  88 N.Y.2d 413, 424 (1996) ................................................................................ 17

*Lamensdorf v. N.Y. Univ.*,
  No. 10 Civ. 3462(JSR), 2010 WL 4967824, at *1 (S.D.N.Y. Nov. 30, 2010) ........................... 9

*Laugh Factory, Inc. v. Basciano*,
  608 F. Supp. 2d 549, 557  (S.D.N.Y. 2009)........................................................... 14

*LoPresti v. Mass. Mut. Life Ins. Co.*,
  30 A.D.3d 474, 476 (2d Dep't 2006) .................................................................. 15

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
  208 F.3d 368, 383 (2d Cir. 2000)........................................................................ 15

*Nat'l Market Share, Inc. v. Sterling Nat'l Bank*,
  392 F.3d 520, 525 (2d Cir. 2004).................................................................... 9, 11

*Rosenfeld v. W.B. Saunders*,
  728 F. Supp. 236, 249-50 (S.D.N.Y.1990) ........................................................... 14

*Roth v. Jennings*,
  489 F.3d 499, 501, 509 (2d Cir. 2007)................................................................... 8

*S. Cherry St., LLC v. Hennessee Group, LLC*,
  573 F.3d 98, 110 (2d Cir. 2009) .......................................................................... 8

*Washington Ave. Associates, Inc. v. Euclid Equip., Inc.*,
  229 A.D.2d 486, 487 (2d Dep't 1996) ............................................................... 17, 18

## RULES

Fed. R. Civ. P. 10(c). ............................................................................................ 8
Fed. R. Civ. P. 12(b)(6)......................................................................................... 8

## <u>INTRODUCTION</u>

In November 2010, plaintiff Goodrich Capital, LLC ("Goodrich"), The Treasurer, Inc. ("Treasurer") and defendant Vector Capital Corporation ("Vector") entered into a Confidentiality and Non-Disclosure Agreement (the "NDA"). The purpose of the NDA was to allow the parties to share information in connection with a possible transaction between Treasurer and Corporate Safe Specialists ("CSS") for which Vector might provide financing. Goodrich had been retained by Treasurer to act as Treasurer's financial advisor, and Goodrich expected to receive a fee from Treasurer upon the completion of the Treasurer-CSS transaction. Vector never agreed to pay Goodrich a fee for any reason and Goodrich never performed any services for Vector.

In February 2011, another company beat out Treasurer to purchase CSS. Thereafter, Goodrich/Treasurer, on the one hand, and Vector, on the other hand, separately pursued the possible acquisition of all or part of Tidel Engineering, LP ("Tidel"). Like CSS, Tidel manufactured and sold "smart safes," a product that could form part of Treasurer's projected business model. Goodrich, Treasurer, and Vector did <u>not</u> enter into any agreement concerning Tidel. However, during the negotiations concerning a possible acquisition of Tidel, Vector continued to consider the possibility of entering into a transaction that would involve both Treasurer and Tidel.

In November 2011, Vector announced that Tidel had been acquired by Vector and Tidel's management team. This transaction did <u>not</u> include Treasurer or Goodrich. Despite the fact that there was no agreement between Goodrich and Vector concerning Tidel, or any other agreement pursuant to which Vector had agreed to pay Goodrich a fee in exchange for services, Goodrich demanded that Vector pay Goodrich a $3.5 million investment banking fee in connection with the Tidel transaction. When Vector refused to make such payment, Goodrich and Windsor

Sheffield & Co. Inc. ("Windsor") filed the original complaint against Vector in December 2011.

Plaintiffs Goodrich and Windsor allege six different "counts" against Vector in the First Amended Complaint, dated February 6, 2012, in this action ("Complaint"): (a) two claims for breach of the NDA, executed in November 2010; (b) a claim that Vector breached an implied covenant of good faith and fair dealing; (c) a claim for unjust enrichment; (d) a tort claim for unfair competition; and (e) a claim that Vector tortuously interfered with a separate non-disclosure agreement that allegedly had been entered into among Goodrich, Treasurer, and Tidel (the "Goodrich-Tidel NDA"). None of these "counts" state a cause of action upon which relief may be granted.

Plaintiffs' two breach of contract claims concerning the NDA fail because: (a) Vector never agreed in the NDA to pay any fees to Goodrich in connection with any transaction; (b) Goodrich seeks to recover a $3.5 million fee from Vector in connection with the Tidel transaction, but the Tidel transaction was unrelated to NDA; and (c) Goodrich never alleges that Vector violated the NDA by misusing any confidential information provided by Goodrich to Vector pursuant to the NDA. Moreover, plaintiff Windsor is not a party to the NDA and cannot make any claim related to the NDA. Thus, the Complaint fails to plead a breach of contract cause of action.

Plaintiffs' other claims are transparent attempts to "end run" the defective contract claims and also fail to state causes of action. For example, the second "count" of the Complaint alleges a "breach of the implied covenant of good faith and fair dealing." But there is no such cause of action under the law of New York, which is the law that governs the NDA. The fifth "count" alleges that Vector should be liable for "unjust enrichment," but New York law does not allow such a claim to substitute for a defective breach of contract claim. Similarly, the remaining

claims, for "unfair competition" and "tortious interference with contract," fail to meet the pleading requirements for such claims under New York law.

In sum, as described in the Complaint, although the parties to the NDA originally contemplated a transaction involving Treasurer that might have resulted in a fee paid by Treasurer to Goodrich, no such transaction ever closed, and the NDA did not require Vector to pay Goodrich any fee in connection with the original potential transaction with CSS. Vector then pursued and succeeded in closing a transaction with Tidel, but Vector never entered into any agreement with Goodrich concerning the Tidel transaction and never agreed to pay any fee to Goodrich. While Goodrich may be disappointed that Goodrich was unable to earn a fee from its client Treasurer on either the CSS transaction or the Tidel transaction, that is no excuse for filing a Federal court complaint against Vector in connection with Vector's successful transaction involving Tidel. The Complaint should be dismissed with prejudice in its entirety.

## STATEMENT OF FACTS

The following facts are based exclusively on the Complaint and the NDA, which was attached as Exhibit 1 to the Complaint.

Goodrich is an unregistered financial advisor to small and medium-sized companies concerning potential business transactions. (Complaint ¶ 7.) In late 2009, Treasurer, a company that has developed a business concept that could help retail clients manage cash handling operations, retained Goodrich to advise Treasurer on a potential transaction. (*Id.* ¶¶ 10, 12.) Treasurer also retained Windsor, a registered securities broker/dealer, to assist in raising capital for Treasurer, but Windsor is not a party to the NDA. (*Id.* ¶¶ 9, 11.) Goodrich assisted Treasurer in formulating a business model and strategy for Treasurer that included, in part, the purchase of an established company that manufactured "smart safes." (*Id.* ¶ 13.)

Goodrich identified CSS as a "smart safe" company that could be acquired by Treasurer in a potential $60 million transaction.  (*Id.* ¶ 14.)  A Windsor representative then contacted Vector to determine whether Vector would be interested in helping to finance the deal between Treasurer and CSS.  (*Id.* ¶ 15.)  Vector is a privately-held company that acts as a value investor in established technology businesses, both public and private, and generally works in partnership with company management and provides financing for the type of potential transaction identified by Goodrich for Treasurer.

In order to properly assess the potential Treasurer-CSS deal and determine whether to provide financing for that deal, Vector entered into the NDA with Goodrich and Treasurer.  (*Id.* ¶ 17.)  The NDA did not require Vector to pay any fees to Goodrich for any reason whatsoever. Instead, the NDA specifically provided that any fees to be received in connection with the Treasurer-CSS deal would be governed by a separate agreement.  In that regard, the NDA merely confirmed that none of the parties to the NDA would seek to circumvent, avoid payment of fees or other compensation, or exclude another party or minimize its role "as described in any such agreement."  (*Id.* ¶ 20; NDA ¶ 5.)

Goodrich created a presentation deck for potential investors in the Treasurer-CSS deal. (Complaint ¶ 21.)  According to the Complaint, Goodrich shared that presentation with Vector as one potential investor in the Treasurer-CSS deal.  (*Id.* ¶ 23.)  The presentation deck outlined sources and uses for the proposed funds to be raised from Vector or another financing party, and the expected uses of the funds included a budget of $3.5 million for "Transaction Fees (Goodrich and other)."  (*Id.* ¶ 25.)  There is no allegation in the Complaint that Vector ever agreed to pay Goodrich any fees in connection with the Treasurer-CSS transaction.  Nor is there any allegation in the Complaint describing what portion of the $3.5 million in "Transaction Fees" represented

4

the financial advisory fees that Treasurer had promised to pay Goodrich pursuant to Treasurer's agreement with Goodrich.

Representatives from Vector, Goodrich, and Treasurer met and conducted a site visit to CSS in January 18, 2011. (*Id.* ¶ 27.) Vector requested additional materials regarding CSS, (*id.* ¶ 29), and on February 9, 2011, Vector sent Goodrich proposed terms upon which Vector would be willing to provide financing for the Treasurer-CSS deal, (*id.* ¶ 30). Among those proposed terms, Vector acknowledged that some of the monies raised in connection with the proposed Treasurer-CSS deal would be used to pay certain of the fees that Treasurer might owe Goodrich in connection with the Treasurer-CSS deal. (*Id.*)

In early February, CSS received a competing offer from Pfingsten Partners, LLC, which CSS accepted at the end of February. (*Id.* ¶ 31.) As a result, discussions with CSS regarding the Treasurer-CSS deal terminated, and the proposal described in the February 9, 2011 email and quoted in the Complaint also died.

After the possible Treasurer-CSS deal ended, Goodrich, as Treasurer's advisor, and Vector, for its own account, independently pursued other opportunities concerning businesses involved in cash handling operations. In late February 2011, Goodrich contacted Tidel as a potential replacement for CSS in the Treasurer-CSS deal. (*Id.* ¶ 33.) On March 1, 2011, representatives of Goodrich met with representatives from Tidel at Tidel's offices in Dallas, Texas. (*Id.* ¶ 34.) There is no allegation in the Complaint that Goodrich had entered into any agreement with Vector concerning Tidel at the time that Goodrich met with Tidel representatives or that Goodrich acted in any way on behalf of Vector during that meeting. During March 2011, Vector also communicated independently with Tidel regarding Vector's potential acquisition of Tidel. (*Id.* ¶ 35.)

On March 11, 2011, Goodrich, Treasurer, and Tidel entered into a Non-Disclosure Agreement to facilitate the exchange of information while they explored a potential transaction among them, the Goodrich-Tidel NDA.  (*Id.* ¶ 36.)  Vector was not a party to the Goodrich-Tidel NDA.  (*Id.*)  There is no allegation in the Complaint that the Goodrich-Tidel NDA precluded Tidel from also negotiating with Vector concerning an acquisition of Tidel by Vector.

On March 30, 2011, Goodrich and Treasurer learned that Tidel had rejected an offer from Vector for Vector's acquisition of Tidel.  (*Id.* ¶ 38.)  From April to July 2011, Goodrich attempted to create a new Treasurer-Tidel transaction and proposed a new deal structure.  (*Id.* ¶ 40.)  The new proposed deal would include Treasurer and Tidel's Sentinel product line.  (*Id.*) In furtherance of a proposed Treasurer-Tidel deal, Goodrich met with Pinebridge, another private equity firm to seek potential financing for the Tidel transaction that Goodrich was pursuing on behalf of Treasurer.  (*Id.* ¶ 41.)  There is no allegation in the Complaint that Goodrich or Treasurer sought Vector's assistance in their pursuit of Tidel from March to July 2011.

In late July 2011, a Windsor representative contacted Vector to propose a meeting with Goodrich for the purpose of asking Vector to provide additional funding for the Treasurer-Tidel deal that Goodrich had pursued on behalf of Treasurer.  (*Id.* ¶ 42.)  Apparently, Goodrich's first choice for financing, Pinebridge, did not offer Goodrich and Treasurer sufficient financing for their proposed Treasurer-Tidel transaction.  As Goodrich knew, Vector had also been pursuing a transaction with Tidel but one that did not include Treasurer.  However, Vector was willing to consider a transaction that did include Treasurer and, in early August 2011, Goodrich sent to Tidel a presentation deck that had been prepared by Vector regarding a potential Treasurer-Tidel deal.  (*Id.* ¶ 44.)  Once again, one of the expected uses of the funds that would be raised in connection with the proposed transaction was $3.5 million for a "transaction fee."  (*Id.*)  And,

once again, there is no allegation in the Complaint concerning the allocation of such a fee and no allegation that Vector agreed to pay any specific amount of the fee that Treasurer might owe Goodrich if such a transaction were to close.

On August 17, 2011, Vector advised Goodrich that Vector had decided to pursue an acquisition of one of Tidel's product lines, but <u>not</u> the Treasurer-Tidel transaction that had been proposed by Goodrich.  (*Id.* ¶ 46.)  In September 2011, Vector informed Goodrich that Vector was performing due diligence on Tidel and that after the completion of the acquisition of the Tidel product line, Vector might resume discussions about a possible transaction between Tidel and Treasurer.  (*Id.* ¶ 47.)  Vector announced in November 2011 that Vector and Tidel's management team had acquired all of Tidel, including the product line that Goodrich and Treasurer had sought to acquire.  (*Id.* ¶¶ 51-52.)  There is no allegation in the Complaint that either Vector or Tidel ever agreed to pay any fee to Goodrich in connection with this transaction nor is there any allegation that Goodrich ever performed any services for Vector or Tidel in connection with this transaction.

7

## ARGUMENT

### THE COURT SHOULD DISMISS THE FIRST AMENDED COMPLAINT WITH PREJUDICE BECAUSE NONE OF THE CAUSES OF ACTION STATE A CLAIM FOR RELIEF

**A.     The Standard of Review on a Motion to Dismiss**

In deciding a motion to dismiss a complaint for failure to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in the plaintiffs' favor. *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *S. Cherry St., LLC v. Hennessee Group, LLC*, 573 F.3d 98, 110 (2d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

A court considering a motion to dismiss "is normally required to look only to the allegations on the face of the complaint." *Roth*, 489 F.3d at 509. Nevertheless, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Furthermore, in deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

**B.**     <u>**This Dispute is Governed by New York Law**</u>

      Plaintiffs' breach of contract claims concern an alleged breach of the NDA by Vector.

The NDA contains a choice of law provision specifying that New York law applies to this

dispute.  (NDA ¶ 11 ("This Agreement shall be governed by and construed in accordance with

the laws of the State of New York, without regard to its conflicts of law principles.").)

      To the extent the choice of law provision in the NDA does not cover Plaintiffs' tort

claims, such claims are also governed by New York law.  New York choice of law principles

govern because this is a diversity action.  *See Fin. One Public Co. Ltd. v. Lehman Bros. Special*

*Fin. Inc.*, 414 F.3d 325, 331 (2d Cir. 2005).  "New York choice of law analysis generally

involves performing an 'interest analysis' where courts give 'controlling effect to the law of the

jurisdiction which, because of its relationship or contact with the occurrence or the parties has

the greatest concern with the specific issue raised in the litigation.'"  *Lamensdorf v. N.Y. Univ.*,

No. 10 Civ. 3462(JSR), 2010 WL 4967824, at *1 (S.D.N.Y. Nov. 30, 2010) (quoting *Babcock v.*

*Jackson,* 12 N.Y.2d 473, 481 (1963).  Here, Goodrich's principal place of business is located in

New York, and Goodrich is organized under New York law, (Complaint ¶ 2), and thus many of

the actions and communications alleged took place in New York.  Therefore, New York law also

applies to Plaintiffs' tort claims because New York has the most significant interest in the issues

raised in the litigation.

**C.**     <u>**Plaintiffs Have Failed to State a Claim for Breach of Contract**</u>

      Under New York law, "[t]o establish a *prima facie* case for breach of contract, a plaintiff

must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3)

damages resulting from the breach."  *Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d

520, 525 (2d Cir. 2004); *see also Feingold v. Chrismas*, --- F. Supp. 2d ----, 10 Civ. 8458(JSR),

2011 WL 4863699, at *3 (S.D.N.Y. Oct. 12, 2011) ("[T]he elements of a breach of contract

action under here applicable New York law are 'the existence of a contract, the plaintiff's

performance thereunder, the defendant's breach thereof, and resulting damages.'" (quoting

*Harris v. Seward Park Hous. Corp.,* 79 A.D.3d 425, 426 (1st Dep't 2010) (per curiam))).

Plaintiffs' claims for breach of contract should be dismissed for three reasons: (i) the

NDA does not require Vector to pay any fees to Goodrich in exchange for services and, instead,

specifically provides that any such fees must be the subject of a separate agreement (presumably

one between Goodrich and its client, Treasurer); (ii) Goodrich seeks to recover $3.5 million in

damages arising from Vector's breach of the NDA because such fees allegedly arise from the

Tidel transaction that closed in November 2011, but the NDA was unrelated to the Tidel

transaction; and (iii) Goodrich has failed to allege that Vector misused any of Goodrich's own

confidential information, as opposed to Treasurer's confidential information, and has thus failed

to allege that Vector breached any of Goodrich's rights under the NDA.

> 1. The Express Terms Of The NDA Do Not Require
>    Vector To Pay Any Fees To Goodrich And, Instead,
>    Plainly State That Any Fees To Be Received By Any
>    <u>Party Will Be The Subject Of A Separate Agreement</u>

In its breach of contract claims, Goodrich to seeks to recover from Vector a $3.5 million

investment banking fee, the loss of which Goodrich claims are damages arising from Vector's

breach of the NDA, executed in November 2010.  The NDA is attached as Exhibit 1 to the

Complaint.

There is no allegation in the Complaint that the NDA required Vector to pay any fees to

Goodrich because the NDA contains no such terms.  Instead, paragraph 5 of the NDA

specifically states that any agreement for payment of fees would be "entered into after the date"

of the NDA and the parties agreed not to "circumvent" the payment of fees that would be

required in "any such agreement."  There is no allegation in the Complaint that Vector ever

entered into any agreement in which it agreed to pay Goodrich any fees in connection with any transaction.

New York law plainly requires that a party plead damages "resulting from the breach." *Nat'l Market Share, Inc.*, 392 F.3d at 525; *see also Feingold v. Chrismas*, 2011 WL 4863699, at *3 (stating that plaintiff must plead "resulting damages" to state a claim for breach of contract under New York law (internal quotation marks and citation omitted)).

Here, Plaintiffs have failed to allege any damages stemming from the purported breach of the NDA. As noted above, the NDA contained no provision for the payment of a transaction fee, but rather it expressly contemplated payment of fees in a future transaction if the parties entered into an agreement regarding that transaction. Because the NDA does not provide for payment of a $3.5 million transaction fee, and the failure to receive this fee is the only damages alleged in the Complaint, Plaintiffs' breach of contract claims should be dismissed.

    2.   The Breach Of Contract Claims Should Be Dismissed
           Because The NDA Was Unrelated To The Tidel Transaction
           <u>Completed By Vector And For Which Plaintiffs Seek Damages</u>

Plaintiffs' breach of contract claims also fail because the NDA, by its terms, concerns a "Contemplated Business Arrangement," which the Complaint describes as the acquisition by Treasurer of a smart safe company. (Complaint ¶ 19.) The Complaint further alleges that the NDA specifically concerned the Treasurer-CSS transaction that never came to fruition because CSS was sold to another buyer. (*Id.* ¶ 31.)

After Treasurer failed to acquire CSS, the Complaint also alleges that the NDA applied to "a new deal structure where only the Sentinel product line of Tidel would be the centerpiece platform *to support Treasurer* and would be included in the overall transaction." (*Id.* ¶ 40 (emphasis added).) Plaintiffs do not contend that Tidel's identity as a smart safe company was

11

confidential information under the NDA.  To the extent Plaintiffs disclosed any "confidential"

business transaction structure information to Vector, that confidential transaction structure

involved the combination of Treasurer with a smart safe company.  (*See id.* ¶ 57.)

Vector chose <u>not</u> to pursue the transaction involving <u>both</u> Treasurer and Tidel that was

proposed by Goodrich on behalf of Treasurer.  (*See id.* ¶¶ 46, 52.)  Instead, Vector entered into a

transaction in November 2011 only involving Tidel.  Thus, Vector's acquisition of Tidel alone

simply was not a "Contemplated Business Arrangement" covered by the terms of the NDA

executed in November 2010, and the Complaint fails to state a claim for breach of the NDA.

      3.   Plaintiff Goodrich's Breach of Contract Claim Should Be
Dismissed Because Plaintiffs Fail To Allege That Vector
Misused Any Confidential Information Concerning The Cash
<u>Management Business Disclosed By Goodrich To Vector Under The NDA</u>

Plaintiffs allege that Vector breached the NDA by "using confidential innovative

information subject to the NDA, novel and unknown to Defendant, for a deal other than the

Contemplated Business Arrangement, as defined in the NDA."  (Complaint ¶ 56.)  The purpose

of the NDA, however, was to protect the party providing its own confidential information.  (*See*

NDA at 1 ("The purpose of this Agreement is to describe and define the conditions and

parameters under which GOODRICH, TREASURER or Vector, as the disclosing party

("Discloser"), will give access to certain of *its* 'Confidential Information' (as defined below) to

the other party ('the Recipient')." (emphasis added).)

Plaintiffs' allegations make clear that the confidential information concerning the cash

management business disclosed to Vector under the NDA belonged to Treasurer, not Goodrich.

Plaintiffs allege that "[a]t no time did Vector indicate it had any prior knowledge or familiarity

with the cash management industry or any of the information or material provided to it by

Plaintiffs to negate any of its obligations under the NDA."  (Complaint ¶ 18.)  The only

information provided to Vector concerning the cash management business that could be classified as "confidential" was information that belonged to Treasurer.  According to the Complaint and the NDA, Treasurer is "a proprietary, fully integrated system that uniquely reduces cash handling costs for small and mid-size retailer and is designed to fill a unique market void, providing an alternative to tradition and cumbersome retail cash handling methods."  (*Id.* ¶ 12; *see also id.* ("A smart safe, safes with a software capacity, is one component of Treasurer's multi-component total solution.").)  Goodrich, by contrast, is an investment banker.  (*Id.* ¶ 8.)

Under the terms of the NDA, Goodrich has no right to bring an action for Vector's alleged use of Treasurer's information.  Thus, the breach of contract claim contained in the first "count" of the Complaint should be dismissed.[1]

**D.      Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should be Dismissed Because It Does Not Constitute A Separate Claim For Relief Under New York Law**

Plaintiffs allege that Vector breached an implied covenant of good faith and fair dealing by allegedly using information in a manner that violated the NDA.  (*See, e.g.*, Complaint ¶ 54 ("Vector Capital used [confidential] information in violation of the NDA and in bad faith and unfairly misappropriated the product of Plaintiffs' labors, skills and expenditures to unjustly enrich itself all to Plaintiffs' financial detriment.").)

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir.

---

[1]      In Plaintiffs' fourth "count", styled as "Breach of Contract – Submission of Idea Claim," they allege that Vector "misappropriated Plaintiffs' plans, ideas, proposals, knowledge, skills, labors and efforts for its own commercial profit and advantage" in violation of the NDA. (Complaint ¶¶ 75-76.)  This claim should be dismissed for the same reasons as Plaintiffs' first, more general breach of contract claim concerning the NDA.

2002); *see also Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 557 (S.D.N.Y. 2009) (dismissing counterclaim for breach of the covenant of good faith and fair dealing in part because it was duplicative of the breach of contract claims); *Jacobs Private Equity, LLC v. 450 Park LLC*, 22 A.D.3d 347, 347-48 (1st Dep't 2005) ("The cause of action for breach of the implied covenant of good faith and fair dealing was properly dismissed as duplicative of the insufficient breach of contract claim.").

Plaintiffs have asserted their claim for breach of the NDA, and having done so they cannot pursue a claim for breach of an implied covenant of good faith and fair dealing based on the NDA.  Therefore, this claim should be dismissed.

**E.      Plaintiffs' Claim for Unfair Competition Should Be Dismissed Because They have Failed to Allege the Basic Elements of This Claim**

The third "count" of the Complaint alleges an "unfair competition" claim, but Plaintiffs fail to allege the most basic elements of such a claim.  First, in order to state a claim for unfair competition under New York common law, Plaintiffs must allege "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods."  *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (quoting *Rosenfeld v. W.B. Saunders, A Div. of Harcourt Brace Jovanovich, Inc.*, 728 F. Supp. 236, 249-50 (S.D.N.Y.1990)).  Plaintiffs make no allegation regarding consumer confusion.  In fact, Plaintiffs had promoted their structure, which involved a joint transaction with Treasurer, to potential investors.  (*See* Complaint ¶¶ 40-42.)  That Tidel elected a different transaction – the sole acquisition by Vector – does not reflect any likelihood to cause confusion or deceive purchasers.

Second, Plaintiffs' claim for unfair competition fails because they do not and cannot make any allegation that Vector commercially advertised or promoted Goodrich's structuring of

14

the Treasurer-CSS deal, which Goodrich shared with Vector under the NDA in an attempt to

obtain financing for that deal, or the Treasurer-Tidel deal.  "[A]n unfair competition claim under

New York common law require[s] that misleading or untruthful statements have been made for

the purpose of commercial advertising or promoting a party's goods, services, or commercial

activities."  *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 383 (2d Cir. 2000); *see*

*also ACTV, Inc. v. The Walt Disney Co.*, No. 01 Civ. 8402(JSR), 2002 WL 922172, at *2

(S.D.N.Y. May 7, 2002) ("New York's common law tort of unfair competition . . . requires

commercial advertising or promotion").  Vector rejected the Treasurer-Tidel deal and informed

Goodrich that it was pursuing a sole acquisition of Tidel on August 17, 2011.  (Complaint ¶ 46.)

Vector never advertised or promoted a transaction involving the joint acquisition of Treasurer

and a smart safe company, whether CSS or Tidel, and Plaintiffs have failed to allege such

advertising or promotion.

Plaintiffs' claim for unfair competition also fails because they do not allege that Vector

acted in bad faith to misappropriate their alleged proprietary structure of the Treasurer-CSS or

Treasurer-Tidel deal.  A plaintiff must "allege the bad faith misappropriation of a commercial

advantage which belonged exclusively to him" to state a claim for unfair competition.  *LoPresti*

*v. Mass. Mut. Life Ins. Co.*, 30 A.D.3d 474, 476 (2d Dep't 2006).  Plaintiffs make the conclusory

allegation that Vector used their confidential information, protected by the NDA, "in bad faith."

(Complaint ¶ 54.)  But they have made no factual allegations in support of this conclusion.

Finally, Plaintiffs have failed to allege that Vector used confidential information

belonging to Plaintiffs, as opposed to Treasurer's.  (*See supra* Part C.3.)  As such, they have

failed to allege that Vector misappropriated a commercial advantage that belonged to them.  For

all of these reasons, Plaintiffs' claim for unfair competition should be dismissed.

**F.      Plaintiffs' Claim for Unjust Enrichment Should Be Dismissed Because an Express
         <u>Agreement, the NDA, Governs the Subject Matter of the Dispute</u>**

Plaintiffs allege that Vector "has been unjustly enriched to Plaintiffs' detriment by the

use of[] confidential information provided to Vector by Plaintiffs in breach of the [NDA]."

(Complaint ¶ 1.)  Under New York law, "[a]n unjust enrichment claim cannot be maintained

where a valid contract exists between the parties."  *Feingold*, 2011 WL 4863699, at *5 (citing

*Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)); *see also Cox v. NAP Constr. Co.,

Inc.*, 10 N.Y.3d 592, 607 (2008) (holding that quantum meruit and unjust enrichment claims

"were correctly dismissed, because a party may not recover in quantum meruit or unjust

enrichment where the parties have entered into a contract that governs the subject matter").

Under New York law, unjust enrichment is a theory of recovery under quasi-contract.  "A 'quasi

contract' only applies in the absence of an express agreement, and is not really a contract at all,

but rather a legal obligation imposed in order to prevent a party's unjust enrichment."  *Clark-

Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987).  Here, Goodrich entered

into an express agreement with Vector – the NDA.  Therefore, Plaintiffs' claim for unjust

enrichment should be dismissed.

In addition, a claim for unjust enrichment under New York law also requires a plaintiff to

plead that the defendant was unjustly enriched "at the plaintiff's expense," and that equity and

good conscience require the defendant to make restitution to plaintiff.  *See, e.g.*, *Golden Pac.

Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001) .  Plaintiffs plead neither

of these elements because, as described above, the facts to support such claims are completely

absent from this matter.  Goodrich and Treasurer twice attempted to convince Vector to finance a

transaction under which Treasurer would acquire a "smart safe" manufacturer as part of its

overall business plan.  The potential Treasurer-CSS transaction failed because the target

16

company sold itself to another buyer.  With respect to the potential Treasurer-Tidel transaction, Vector and Tidel closed a transaction that did not include Treasurer.  Thus, the Complaint does not allege facts that show that Vector was unjustly enriched at Goodrich's expense or in a manner that requires any form of restitution to Goodrich.

**G.      Plaintiffs' Claim for Tortious Interference with Contract Should Be Dismissed**

Under New York law, "[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996).

Plaintiffs' tortious interference with contract allegations are deficient because Plaintiffs fail to plead that, but for Vector's alleged conduct, Tidel would not have breached an agreement with Goodrich and Treasurer.  *See Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006) (holding that "a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct" (citing *Washington Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 229 A.D.2d 486, 487 (2d Dep't 1996)); *see also Washington Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 229 A.D.2d 486, 487 (2d Dep't 1996) ("The plaintiff's contention that Euclid breached the lease because of the appellant's actions, without a factual basis to support it, was insufficient to state a cause of action against the appellant for tortious interference with contractual relations." (citing cases)).

Finally, failing to find any basis to allege that Vector intentionally caused Tidel to breach an agreement with Goodrich and Treasurer, Plaintiffs speculate a motive that Vector caused Tidel to breach the agreement "in order to avoid paying Goodrich's fees."  (Complaint ¶ 86.) However, Plaintiffs have not alleged any agreement with Tidel or Vector under which either

17

Tidel or Vector was obligated to pay Goodrich a fee in connection with the Tidel-Vector transaction.  Vector entered into the NDA with Goodrich and Treasurer to explore a potential transaction with CSS, but Vector never agreed to finance a transaction with Goodrich and Treasurer nor finalized any documents providing for the payment of transaction fees.  Tidel entered into a different NDA with Goodrich and Treasurer, but there is no allegation in the First Amended Complaint that this second NDA obligated Tidel to pay any fee to Goodrich.  The allegation the Vector caused Tidel to breach a contract with Goodrich and Treasurer so that Vector could avoid paying fees it had no obligation to pay is conclusory and cannot sustain Plaintiffs' claim.  *See Washington Ave. Assocs.*, 229 A.D.2d at 487 ("the allegations in the complaint cannot be vague and conclusory" (citing cases)).

For all of these reasons, Plaintiffs' claim for tortious interference with contract should be dismissed.

**H.**     **All Claims Asserted by Plaintiff Windsor Should be Dismissed**

Finally, all of Plaintiffs' claims should also be dismissed to the extent that they are asserted on behalf of Plaintiff Windsor.  Windsor was not a party to the NDA, nor do Plaintiffs allege that Windsor was a third party beneficiary of the NDA.  Plaintiffs' claims concern Vector's alleged use of confidential information as defined in the NDA, but the NDA only protects the confidential information of Goodrich, Treasurer, and Vector.  Nor was Windsor a party to the Goodrich-Tidel NDA, (*see* Complaint ¶ 36), and thus Windsor cannot claim that Vector tortiously interfered with that contract.  Plaintiffs have made no factual allegations to establish that Vector entered into any agreements with Windsor or owed Windsor any duties, and thus all claims by Windsor against Vector should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Vector respectfully requests that the Court dismiss all of

Plaintiffs' claims with prejudice.


Dated:  New York, New York
        February 24, 2012

                                PARK & JENSEN LLP


                                By:   /s/ Robert Knuts
                                         Robert Knuts (rknuts@parkjensen.com)
                                         Joshua Andrix (jandrix@parkjensen.com)

                                630 Third Avenue, 7th Floor
                                New York, NY 10017
                                Telephone: (646) 200-6330
                                Facsimile: (646) 200-6331

                                *Attorneys for Defendant*
                                *Vector Capital Corporation*