UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GOODRICH CAPITAL, LLC and
WINDSOR SHEFFIELD & CO. INC.,

                Plaintiffs,         11 CIV 09247 (JSR)

-against-

                              ECF CASE

VECTOR CAPITAL CORPORATION,

                Defendant.

## DEFENDANT VECTOR CAPITAL CORPORATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

PARK & JENSEN LLP

Robert Knuts
Joshua Andrix

630 Third Avenue, 7th Floor
New York, NY 10017
Telephone: (646) 200-6330
Facsimile: (646) 200-6331

*Attorneys for Defendant*
*Vector Capital Corporation*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................. ii
INTRODUCTION .................................................................................................................... 1
ARGUMENT ............................................................................................................................ 2

    THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE BECAUSE NONE OF THE CAUSES OF ACTION STATE A CLAIM FOR RELIEF ......................................................................................................... 2

    A.     The Complaint Fails to State Any Claim for Breach of Contract ............... 2

        1.    The Scope of the NDA .................................................................... 2

        2.    The NDA and The Tidel Transaction ............................................ 3

    B.     New York Law Bars Plaintiffs From Asserting a Separate Claim For Breach of the Implied Covenant of Good Faith and Fair Dealing Under the NDA ............................................................... 4

    C.     Plaintiffs Failed to Allege the Required Elements of an Unfair Competition Claim ........................................................................ 4

    D.     New York Law Bars Plaintiffs From Alleging A Separate Claim For Unjust Enrichment ................................................................. 6

    E.     Plaintiffs' Claim for Tortious Interference with Contract Should be Dismissed ............................................................................... 7

    F.     All Claims Asserted by Plaintiff Windsor Should be Dismissed ............... 9

CONCLUSION ....................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Cases**..................................................................................................................................**Page(s)**

*Barbagallo v. Marcum LLP*
  F. Supp. 2d ----, No. 11 Civ. 1358, 2011 WL 5068086, at *8 (E.D.N.Y. Oct. 25, 2011) .......... 6

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008).................................................................................. 6

*Cf. Underdog Trucking, LLC v. Verizon Servs. Corp.*,
  No. 09 Civ. 8918(DLC), 2010 WL 2900048, at *4 (S.D.N.Y. July 20, 2010).......................... 9

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
  70 N.Y.2d 382, 388 (1987) ......................................................................................................... 6

*Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*,
  74 N.Y.2d 475, 482 (1989) ......................................................................................................... 3

*Ferrandino & Son, Inc. v. Wheaton Builders, Inc., LLC*,
  82 A.D.3d 1035, 1036 (2d Dep't 2011) ..................................................................................... 8

*Harris v. Provident Life & Accident Ins. Co.*,
  310 F.3d 73, 81 (2d Cir. 2002).................................................................................................... 4

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27, 34 (2d Cir. 1995)...................................................................................................... 5

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
  52 N.Y.2d 105, 109 (1981) ......................................................................................................... 3

*Sharma v. Skaarup Ship Mgmt. Corp .*,
  916 F.2d 820, 828 (2d Cir.1990)............................................................................................ 7, 8

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
  487 F.3d 89, 95 (2d Cir. 2007).................................................................................................... 3

## INTRODUCTION

Plaintiff Goodrich Capital LLC ("Goodrich") and The Treasurer, Inc. ("Treasurer") entered into a written Non-Disclosure Agreement in November 2010 (the "NDA") with defendant Vector Capital Corporation ("Vector"). All of Goodrich's claims for relief allegedly arise out of the NDA and Vector's supposed breaches of the NDA. However, no matter how many conclusory allegations are contained in the First Amended Complaint ("Complaint"), a careful examination of the NDA (attached as Exhibit 1 to the Complaint) and the factual allegations contained in the Complaint demonstrates Plaintiffs' complete failure to allege any cause of action against Vector.

As described in the Complaint, Plaintiffs entered into an agreement with Treasurer to provide financial advisory services to Treasurer and to seek financing from third parties for a proposed transaction involving Treasurer. In furtherance of that assignment, Plaintiffs contacted several sources of potential financing, including Vector, on behalf of Treasurer. Presumably, Treasurer had agreed to compensate Plaintiffs if they were successful in persuading a third party, such as Vector, to provide financing for a proposed transaction.

As acknowledged by the Complaint, Goodrich and Treasurer failed to convince Vector to enter into the transactions proposed by Goodrich and Treasurer. The only contract entered into by Vector – the NDA – did not create any obligation of Vector to enter into those proposed transactions or to pay any compensation to Goodrich in connection with the proposed transactions. Nor did the NDA prohibit Vector from competing with Goodrich and Treasurer to acquire Tidel Engineering, L.P. ("Tidel"). Because the parties' rights and responsibilities were governed by the NDA and the factual allegations contained in the Complaint do not allege a breach of the NDA or any other violation of New York law, the Complaint should be dismissed

with prejudice in its entirety.

## ARGUMENT

### THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE BECAUSE NONE OF THE CAUSES OF ACTION STATE A CLAIM FOR RELIEF

**A.     The Complaint Fails to State Any Claim for Breach of Contract**

In response to Vector's motion to dismiss the claims for breach of contract, Goodrich attempts to invent a new version of the NDA that is completely inconsistent with the actual terms of the NDA. In addition, Goodrich blatantly mischaracterizes the transaction that was contemplated by the parties at the time of the NDA. Neither of these arguments provide any basis for denying Vector's motion to dismiss.

1.   The Scope of the NDA

In its opposition memorandum, Goodrich claims that "[t]he NDA was not limited to a particular transaction, but rather covered any project involving the cash management industry." Pl. Br. at 1-2. That allegation is not contained in the Complaint and is completely inconsistent with the actual language of the NDA. For example, the NDA states plainly that the parties were "exploring the possibility of a business arrangement or relationship (the "Contemplated Business Arrangement") with regard to a new business opportunity related to cash handling services (Project)." Complaint, Exhibit 1, p. 1. There is simply no language in the NDA that states that Vector was precluded by the NDA from pursuing a different business arrangement or relationship "involving the cash management industry."

Moreover, Goodrich's contention that it is entitled to a $3.5 million fee in the event that Vector ever entered into any transaction "involving the cash management industry" is not enforceable under New York law because such an obligation is not described with reasonable

certainty in the NDA.  "If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989) (*citation omitted*).  *See also Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) ("[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." (*quoting Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981))).

Here, paragraph 5 of the NDA specifically stated that any fees or compensation to be paid to any parties to the NDA would be covered by an "agreement between the parties entered into after the date hereof with respect to the Contemplated Business Arrangement . . . ."  Thus, the NDA simply cannot be read to provide Goodrich with a claim for fees arising from any "transaction involving the cash management industry."

    2.   The NDA and The Tidel Transaction

Goodrich further argues that Vector breached the NDA when it engaged in the Tidel transaction because the Tidel transaction represented "95% of the business opportunity proposed by Plaintiffs" and Vector failed to pay "Plaintiffs any compensation."  Pl. Br. at 2.

In fact, Goodrich's own "presentation deck", repeatedly referenced in the Complaint at paragraphs 21-25, includes a slide that describes the proposed "Transaction."   The "Transaction", as proposed by Goodrich/Treasurer, expressly included: (a) $55 million in equity and debt financing to purchase Corporate Safe Specialists; (b) the creation of a $135 million asset based fund to finance equipment rentals, with an initial 24 month requirement of $30 million; and (c) a $280 million asset based fund to support in-store deposit credit, with an initial 24 month requirement of $60 million.  Thus, Goodrich's description of Vector's acquisition of Tidel's safe manufacturing business as "95% of the business opportunity proposed by Plaintiffs"

is grossly inaccurate and directly contradicted by the "presentation deck" cited in the Complaint.[1]

The Complaint simply does not allege facts that describe any breach of the NDA by Vector. The terms of the NDA did not require Vector to pay Goodrich any compensation nor did the NDA prohibit Vector (or Goodrich/Treasurer) from pursuing an acquisition of Tidel without the involvement of the other parties. The fact that Vector succeeded in acquiring Tidel while Goodrich/Treasurer failed, does not mean that Vector breached the NDA.

**B.     New York Law Bars Plaintiffs From Asserting a Separate Claim For Breach of the Implied Covenant of Good Faith and Fair Dealing Under the NDA**

According to Goodrich, Vector's argument that the Court should dismiss their separate claim for breach of the implied covenant of good faith and fair dealing is "formalistic[]" and "unsupported under the law." (Pls. Br. at 16.) But Goodrich fails to dispute the case law cited by Vector in its moving papers, which plainly states that "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Nor do Plaintiffs cite any authority to the contrary. Because Plaintiffs have asserted a claim for breach of the implied covenant of good faith and fair dealing under the NDA, based on the same facts as Plaintiffs' purported claims for breach of contract, the Court should dismiss this separate claim.

**C.     Plaintiffs Failed to Allege the Required Elements of an Unfair Competition Claim**

Plaintiffs' unfair competition claim fails because they do not allege any facts that support the finding of bad faith, deception, or fraud that is necessary to plead such a claim under New

---

[1]     Counsel for Plaintiffs takes the position that Vector may not submit to the Court a copy of the "presentation deck" (i.e., a PowerPoint presentation) that is described in the Complaint without violating the NDA. Paragraph 4(d) of the NDA states that Vector may "disclose" the "presentation deck" if required to do so by "court order."

York law.  Plaintiffs argue that they have alleged the bad faith required for a claim for unfair competition "by asserting that Defendant's actions were in violation of the parties' confidentiality agreement," that Vector accepted Plaintiffs' work product, and that Vector pursued a separate transaction with Tidel.  (Pls. Br. at 18.)

This argument ignores the fact that the Complaint itself alleges that Goodrich knew Vector was pursuing a separate transaction with Tidel at the same time that Goodrich purportedly invested significant time and effort in the Treasurer-Tidel transaction.  Goodrich learned in March 2011 that Vector had sought to acquire Tidel in a different transaction without Treasurer, (Complaint ¶ 38), and Vector informed Goodrich again in August 2011 that it was pursuing a deal with Tidel without Treasurer, (*id.* ¶ 46).  There was nothing "surreptitious[]" or "deceptive[]" about Vector's conduct, (Pls. Br. at 18-19), and Plaintiffs' allegations suggest that they were fully aware that Vector might pursue another transaction different from the one Goodrich purportedly devised.

Moreover, after the transaction contemplated by the NDA (the Treasurer-CSS deal) fell through, Goodrich entered into a new NDA with Treasurer and Tidel (not with Vector) to pursue a different transaction with Treasurer.  (Complaint ¶ 36.)  Goodrich spent four months trying to resurrect a deal with Treasurer without Vector's involvement, (*id.* ¶ 40), and then Goodrich shopped this new deal with Treasurer around to other private equity funds, in addition to Vector, (*id.* ¶¶ 41-42).  Plaintiffs' allegations provide no basis to conclude that Vector acted in bad faith by separately pursuing a transaction with Tidel, especially when Goodrich and Treasurer were doing the exact same thing.  Thus, Plaintiffs' claim for unfair competition should be dismissed.  *See, e.g.*, *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) ("[T]he essence of unfair competition under New York common law is the *bad faith*

5

*misappropriation* of the labors and expenditures of another . . . ." (internal quotation marks and citation omitted; emphasis added)); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008) (dismissing unfair competition claim where plaintiffs "fail adequately to allege the bad faith acts by which [defendants] misappropriated [their] labor or resources for their own commercial advantage").

### D. New York Law Bars Plaintiffs From Alleging A Separate Claim For Unjust Enrichment

In response to Vector's argument that Plaintiffs' unjust enrichment claim fails because they entered into an express agreement – the NDA – that governs the subject matter of the dispute, Plaintiffs argue that Vector's position "is unsupported under the law". (Pls. Br. at 21.) But Plaintiffs rely on the same legal authority cited by Vector in support of its motion to dismiss. (*See* Pls. Br. at 20 ("New York law further provides that the 'existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)).)

Vector's argument that its acquisition of Tidel alone was not a "Contemplated Business Arrangement" under the NDA is entirely consistent with the argument that the unjust enrichment claim should be dismissed. The NDA clearly governs the subject matter of Plaintiffs' claims and there is no dispute as to the existence of the NDA. Under these circumstances, New York law prohibits Plaintiffs from asserting a claim for unjust enrichment "in the alternative," (Pls. Br. at 22). *See, e.g.*, *Barbagallo v. Marcum LLP*, --- F. Supp. 2d ----, No. 11 Civ. 1358, 2011 WL 5068086, at *8 (E.D.N.Y. Oct. 25, 2011) ("Because there is no genuine disagreement over the existence of a contract and the Contract covers both of the disputed issues, [defendant's] counterclaim for unjust enrichment is dismissed.").

In addition, Plaintiffs argue that "equity and good conscience require that Defendant compensate Plaintiffs," (Pls. Br. at 21), without citing any supporting facts. The facts as alleged demonstrate otherwise. Goodrich and Treasurer tried twice to convince Vector to finance a transaction with the Treasurer. The Treasurer-CSS deal failed because CSS was sold to another buyer. (Complaint ¶ 31.) And Vector decided to pursue another transaction, the acquisition of Tidel alone, rather than a transaction with Treasurer, a fact that was fully disclosed to Goodrich. (*Id.* ¶¶ 38, 46.) The Complaint does not allege any facts showing that Vector was unjustly enriched at Plaintiffs' expense. Therefore, Plaintiffs' claim for unjust enrichment should be dismissed.

### E.     Plaintiffs' Claim for Tortious Interference with Contract Should be Dismissed

Plaintiffs have failed to plead any facts supporting the conclusory allegation that Vector intentionally procured Tidel's breach of an agreement with Goodrich and Treasurer, and that Tidel would not have otherwise breached that agreement as alleged. Thus, under New York law, Plaintiffs' claim for tortious interference with contract should be dismissed. *See, e.g.*, *Sharma v. Skaarup Ship Mgmt. Corp*., 916 F.2d 820, 828 (2d Cir.1990) ("Intentional procurement of a breach is an essential element of the tort of interference with contractual relations. A plaintiff must allege that there would not have been a breach but for the activities of defendants." (internal quotation marks and citation omitted)).

The Complaint does not allow for any reasonable inference that "Vector purposefully influenced Tidel to exclude Plaintiffs from the business opportunity identified by Plaintiffs in order to avoid paying Plaintiffs any compensation." (Pls. Br. at 22-23.) Plaintiffs fail to plead any facts supporting the conclusion that Vector or Tidel owed Plaintiffs fees, and instead rely on dinner meetings, phone calls, and other communications in which Plaintiffs allege that Vector

7

and Tidel committed themselves to paying Plaintiffs millions of dollars.  (*See, e.g.*, Complaint ¶ 48 ("On one such call Tidel CFO Jeff Galgano told the President of Goodrich that as 'the advisor on this transaction and having been an investment banker myself, you have earned every bit of your fee on this deal[.]'").)

The inferences Plaintiffs urge are implausible, and they are not sufficient to state a claim for tortious interference with contract under New York law.  *See Sharma v. Skaarup Ship Mgmt. Corp* ., 916 F.2d 820, 828 (2d Cir.1990) (holding that District Court properly dismissed tortious interference with contract claim where plaintiffs failed to sufficiently allege defendants were the "motivating force" behind the breach); *Ferrandino & Son, Inc. v. Wheaton Builders, Inc., LLC*, 82 A.D.3d 1035, 1036 (2d Dep't 2011) (dismissing claim for tortious interference with contract where plaintiff "merely asserted, in a conclusory manner and without the support of relevant factual allegations, that [defendant's] actions caused [the breach of a] subcontract" and where "plaintiff failed to allege that, but for [defendant's] actions, [the other party] would have continued the subcontract").

Plaintiffs' conclusory argument that they have alleged that but for Vector's interference Tidel would have included Plaintiffs in the transaction is equally defective.  Plaintiffs argue this but for relationship is established because "Tidel told Plaintiffs that they had earned fees, while Vector insisted Plaintiffs would not be paid." (Pls. Brief. at 23.)  But Plaintiffs fail to allege any agreement under which Tidel or Vector agreed to pay Goodrich a fee in connection with the Tidel-Vector transaction.  Vector's refusal to pay Goodrich a fee for a transaction that was never consummated, and *after* informing Goodrich that the Tidel-Vector transaction would close, (*see* Complaint ¶ 50), provides no basis to conclude that Tidel would have otherwise closed a

transaction with Goodrich and Treasurer.  Thus, Plaintiffs' claim for tortious interference with contract should be dismissed.

**F.     All Claims Asserted by Plaintiff Windsor Should be Dismissed**

All of Plaintiffs' claims should be dismissed to the extent they are asserted on behalf of Windsor.  Plaintiffs allege that Windsor is Goodrich's affiliate but the Complaint provides no factual allegations concerning how Windsor is affiliated with Goodrich or how that affiliation provides any rights to Windsor.  (Complaint ¶ 9.)  Windsor is not mentioned in the NDA, nor are Goodrich's "affiliates" defined in the NDA.  *Cf. Underdog Trucking, LLC v. Verizon Servs. Corp.*, No. 09 Civ. 8918(DLC), 2010 WL 2900048, at *4 (S.D.N.Y. July 20, 2010) (noting that contract separately defined affiliates).  Thus, Plaintiffs' allegations fail to establish that Windsor was a party to the NDA.  Furthermore, Plaintiffs provide no facts to support their conclusory argument that Windsor and Vector entered into an "implied-in-fact contract."  (Pls. Br. at 24.) Plaintiffs have made no factual allegations that Vector entered into any contracts with Windsor nor owed Windsor any duties, and thus all claims by Windsor against Vector should be dismissed.

## **CONCLUSION**

For the foregoing reasons, and the reasons described in Vector's moving brief, Vector respectfully requests that the Court dismiss all of Plaintiffs' claims with prejudice.

Dated: New York, New York
March 16, 2012

        PARK & JENSEN LLP

        By: /s/ Robert Knuts
            Robert Knuts (rknuts@parkjensen.com)
            Joshua Andrix (jandrix@parkjensen.com)

        630 Third Avenue, 7th Floor
        New York, NY 10017
        Telephone: (646) 200-6330
        Facsimile: (646) 200-6331

        *Attorneys for Defendant*
        *Vector Capital Corporation*